# EXHIBIT "A"

*Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association*

WARNING:  NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE
COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").

## CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing.  Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply.  One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

# Residential Contract of Sale

*Contract of Sale* made as of October 29, 2021

## BETWEEN

**TISHA M. RUNYAN**
Address: 23 Stangel Drive, Woodbourne, NY 12788
Social Security Number/Fed. I.D. No.(s):                                                                hereinafter called "Seller" and
**MOSHE SCHWARTZ**
Address: 1327 46th Street, Brooklyn NY 11219
    Social Security Number/Fed. I.D. No.(s):                                                            hereinafter called "Purchaser"

## *The parties hereby agree as follows:*

**1. Premises.**  Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:

Street Address: 23 Stangel Drive, Woodbourne, NY 12788
Tax Map Designation Town of Fallsburg Tax Map # 23.-12-2.1

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway.  Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**2. Personal Property.**  This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below.  Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject.  They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, range, oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below, if any, as presently exist upon the subject premises, all in as is condition

Excluded from this sale are furniture and household furnishings.

**3. Purchase Price.**  The purchase price is      **$230,500.00** payable as follows:

(a)  On the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):
**$23,000.00**

(b)  ~~By allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:          $~~

(c)  ~~By a purchase money note and mortgage from Purchaser to Seller:          $~~

(d)  Balance at Closing in accordance with paragraph 7:
**$207,500.00**

~~**4. Existing Mortgage.**  *(Delete if inapplicable)* If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:~~

(a)  ~~The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of      percent per annum, in monthly installments of $      which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on      ~~

(b)  ~~To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the~~

~~payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.~~

~~(c) If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.~~

~~(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more then 30 days before Closing, containing the same information.~~

~~(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.~~

~~5. Purchase Money Mortgage. (*Delete if inapplicable*) If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:~~

~~(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $         for its preparation.~~

~~(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than      percent per annum and the total debt service thereunder shall not be greater than $         per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess is to be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefore, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.~~

**6. Downpayment in Escrow.**

(a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at:
   address Jeff Bank, Route 42, Monticello NY

until Closing or sooner termination of this contract shall pay over or apply the Downpayment in accordance with the terms of this paragraph.17 Escrowee shall hold the Downpayment in a non-interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non-appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advise of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

**7. Acceptable Funds.** All money payable under this contract unless otherwise specified, shall be paid by:
   (a) Cash, but not over $1,000.00

2

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser.

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $500.00 or closing adjustments, whichever is greater; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

~~8. **Mortgage Commitment Contingency.** *(Delete paragraph if inapplicable. For explanation, see:* **NOTES ON MORTGAGE COMMITMENT CONTINGENCY CLAUSE.)**~~

~~(a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before 45 days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $ for a term of at least 30 years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.~~

~~(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.~~

~~(c) *(Delete this subparagraph if inapplicable)* Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).~~

~~(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8.~~

~~(e) If no Commitment is issued by an Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.~~

~~(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.~~

~~(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.~~

~~(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this paragraph 8) and except as set forth in paragraph 27.~~

~~(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state, foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.~~

~~(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.~~

**9. Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

3

**10. Governmental Violations and Orders.**

(a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date of closing by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

(b) ~~(Delete if inapplicable)  All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.~~

**11. Seller's Representations.**

(a) Seller represents and warrants to Purchaser that:

  I.   The Premises abut or have a right of access to a public road;

  II.  Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

  III. Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act. Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

  IV.  The Premises are not affected by any exemptions or abatements of taxes; and

  V.   Seller has been known by no other name for the past ten years, except:

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**12. Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical conditions, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(e), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

**13. Insurable Title.** Seller shall give and Purchaser shall accept such title as any title insurance company licensed to do business within the State of New York shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

**14. Closing, Deed and Title.**

(a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a **Bargain and Sale Deed with Covenants against Grantor's Acts** in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

**15. Closing Date and Place.** Closing shall take place at the office of Zachary D. Kelson, Esq. at 11:00 o'clock on or about February 16, 2022 or via mail away in escrow

**16. Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a One family dwelling at the date of Closing.

(c) The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(e) ~~All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment, and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.~~

(f) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke and carbon monoxide detecting alarm device or devices.

(g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

**17. Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**18. Apportionments and Other Adjustments; Water Meter and Installment Assessments.**

(a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing: S/C/T: 01/01/22 to 12/31/22 and School: 09/01/21 to 08/31/22
(i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.

(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c) If there is a water meter on the Premises, Seller shall furnish a final reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

**19. Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less that five business dates after Closing, provided the official bills therefor computed to said date are produced at Closing.

**20. Use of Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

**21. Title Examination; Seller's Inability to Convey; Limitations of Liability.**

(a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b) (i) If at the date of Closing, Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser for updating the existing survey of the Premises or of a new survey, (all of which charges shall not exceed the sum of $350.00) and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

**22. Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**23. Defaults and Remedies.**

(a) If Purchaser willfully defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be

impossible to ascertain and the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including but not limited to, specific performance.

**24. Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**25. Notices.** Any notice or other communication ("Notice") shall be in writing and either:

(a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or via email or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant in this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any Notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c) with respect to paragraph 7(b) or paragraph 20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries. This contract may be delivered as provided above or by ordinary mail.

**26. No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void. Notwithstanding the foregoing, Purchaser shall be entitled to assign this contact to a Corporation or LLC in which he owns at least 51% of the shares of stock or membership units as the case may be.

**27. Broker.** Seller and Purchaser each represents and warrants to the other that they have not dealt with any broker in connection with this sale other than Exit Realty Venture ("Broker") and Seller shall, if only as and when closing occurs and upon closing, pay Brokers commission earned pursuant to agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorney's fees arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur the termination of this contract.

**28. Miscellaneous.**

(a) All prior understanding, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this or any provisions hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by any other person or entity.

(i) If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

**SEE RIDER TO CONTRACT OF SALE ANNEXED HERETO and made a part hereof for additional terms and provisions of this Contract. In the event of any conflict between the main portion of this Contract of Sale and the annexed Rider, the terms and provisions of the annexed Rider shall control.**

***In Witness Whereof,*** this contract has been duly executed by the parties hereto.

_____
TISHA M. RUNYAN
*Seller*

_____
*Seller*

Attorney for Seller: Zachary D. Kelson, Esq.
Address:  10 St. John St., P.O. Box 1210,
          Monticello, New York  12701-8210

Tel.: (845) 794-1000     Fax:  (845) 794-1422
zacharykelson@gmail.com

Receipt of the Downpayment is acknowledged and the undersigned
agrees to act in accordance with the provisions of paragraph 6 above.


_____
MOSHE SCHWARTZ                    *Purchaser*

_____
                                  *Purchaser*

Attorney for Purchaser: Abraham Weisel, Esq.
Address: 491 Route 208- Suite 305
Monroe, New York, 10950
office@weisellaw.com/ office@azcloser.com
Tel.: ( 845) 637-2360- ext #102 Fax:( 845 ) 237-3954

_____
                                  *Escrowee*


## *Contract of Sale*

TITLE NO.

_____
            TISHA M. RUNYAN

                  TO

            MOSHE SCHWARTZ


## PREMISES

| | |
|---|---|
| Sheet | |
| Section | 23. |
| Block | 12 |
| Lot | 2.1 |
| Plate | |
| County/Town | Sullivan/ Fallsburg |
| Street Number | 23 Stangel Drive |

7

## RIDER TO CONTRACT OF SALE DATED AS OF OCTOBER 29, 2021
## BETWEEN TISHA M. RUNYAN, AS SELLER
## AND MOSHE SCHWARTZ, AS PURCHASER

R-1:   The within described premises are sold and are to be conveyed subject to the following:  (a) Covenants, restrictions, rights of way, utility easements and agreements, if any, contained in the former deeds or other instruments of record, insofar as the same may now be in force or effect, provided same do not prohibit the use and maintenance of the existing structures thereon; (b) possible encroachments of retaining walls, bay windows, hedges, copings, fences, and fire escapes and walls; (c) rights, if any, acquired by any utility company to maintain and operate lines, wire cables, poles and distribution boxes, in, over and upon said premises; (d) variation between description herein and tax map description; (e) any state of facts an accurate survey might show provided that title is not rendered unmarketable thereby.

R-2:   The purchaser has examined the premises and fixtures or equipment agreed to be sold and is familiar with the physical condition thereof.  The seller has not made and does not make any representations as to the physical condition thereof, expenses, operation or any other matter or thing affecting or related to the aforesaid premises, except as herein specifically set forth, and purchaser expressly acknowledges that no such representations have been made and purchaser further acknowledges that he has inspected the premises and fixtures or equipment, and agrees to take the premises and fixtures or equipment "AS IS".

R-3:   If the seller shall be unable to convey a good and marketable title, subject to and in accordance with this agreement, the sole obligation of the seller shall be to refund the purchaser's down payment made hereunder and to reimburse the purchaser for the net cost of title examination and upon the making of such refund and reimbursement, this agreement shall wholly cease and terminate and neither party shall have any further claim against the other by reason of this agreement, and the lien, if any, of the purchaser against the premises shall wholly cease.  The seller shall not be  required to bring any action or proceeding  or  otherwise  to  incur  any  expense  to  render  the  title  to  the  premises marketable.  The purchaser may nevertheless accept such title as the seller may be able to convey, without reduction of the purchase price or any credit or allowance against the same, and without any other liability on the part of the seller.  The amount of said charge is limited to the amount set forth in Paragraph "21" of the Contract of Sale.

R-4:   The existence of mortgages, liens or encumbrances shall not be objections to title provided that properly executed instruments in recordable form necessary to satisfy the same are delivered to the purchaser at the closing of title, together with recording and/or filing fees, and such mortgages, liens or encumbrances may be paid out of the cash consideration paid by the purchaser.

1

R-5:   The purchaser agrees to deliver to the attorney for the seller seven (7) days prior to the date set for closing of title, a written list, of any objections or violations which may appear on the title examination, and the seller, at her/his option, shall be entitled to a reasonable adjournment for the purpose of removing such objections or violations. Receipt of the title report by the attorney for the Seller shall be deemed notice to the Seller of any such title defects.

R-6:   Anything to the contrary herein contained notwithstanding, it is specifically understood and agreed by the parties hereto that the acceptance and delivery of the deed of conveyance at the time of the closing of title hereunder, without specific written agreement, which by its terms shall survive such closing of title, shall be deemed to constitute full compliance by the seller with the terms, covenants and conditions of this Contract on his/her part to be performed. It is further agreed that none of the terms hereof, except those specifically made to survive title closing, shall survive such title closing.

R-7:   The purchaser shall be entitled to assign this contract upon the consent of the Seller, which shall not be unreasonably refused, provided that the assignee assumes all the terms and provisions of this contract to be kept and performed by the purchaser hereunder. Any such assignment, however, shall not relieve the purchaser of the obligations assumed hereunder pending closing of title and the payment to the seller of the full consideration required to be paid hereunder.

R-8:   The seller is not liable or bound in any manner by express or implied warranties, guarantees, promises, statements, representations, or information pertaining to the premises contracted to be sold, the condition thereof or any other matter made or furnished by any real estate broker, salesperson or representative, agent, or any person representing or purporting to represent the seller unless such warranties, guarantees, promises, statements, representations or information are expressly and specifically set forth in writing in this contract.

R-9: The premises is serviced by municipal water and sewer .

R-10: This contract may be executed by the parties via electronic signatures and in counterpart.

R-11:  Seller has no knowledge of any easements for public improvements affecting the premises herein and that there will be none as of the date of closing; seller further represents that he or she has no knowledge of condemnation of any portion of the premises to be conveyed herein.

2

R-12: Seller shall provide purchaser or his/her agents access to the subject premises at reasonable times prior to closing upon 24 hours notice in order that purchaser or his/her agents can determine the condition of the premises.

R-13: In the event that the closing of title in this matter does not close via mail away in escrow must close outside of Sullivan County, then and in that event, the purchaser shall pay to the attorney for the seller for attendance at closing at the lending institution, the following amounts:

(a)    The sum of Three Hundred Fifty and 00/100ths ($350.00) Dollars if the lending institution is located within the County of Orange, NY;

(b)    The sum of Four Hundred Fifty and 00/100ths ($450.00) Dollars if the lending institution is located in a County contiguous to Sullivan County, excluding Orange County;

(c)    In the event that the lending institution is located in Nassau County, Suffolk County or any of the five counties comprising the City of New York, purchaser shall pay to the attorney for the seller the sum of Seven Hundred Fifty and 00/100ths ($750.00) Dollars;

(d)    In the event that the lending institution is located in a county or a location other than set forth above, purchaser shall pay to the attorney for the seller the sum of Seven Hundred Fifty and 00/100ths ($750.00) Dollars.

R-14: Seller shall not be liable for any "pickup" fee  to pay off any lien, in excess of $175.00 per lien, which sum shall be inclusive of overnight delivery expenses. Purchaser shall be responsible for any charges in excess of this amount.

R-15:    Seller represents that she has no knowledge that any hazardous materials and waste are located on the property, and Seller has no knowledge of violations of any law, rule or regulation relating to hazardous waste substance.  This representation is made to the best of the Seller's present knowledge.

R-16: The Seller represents that at the time of closing, the premises will be in substantially the same condition as it was at the time of the inspection conducted by or on behalf of the Purchaser

R-17: Seller is currently in Chapter 13 Bankruptcy under case #20-35905(cgm) .This transaction is subject to and conditioned upon the approval of this sale by the Bankruptcy Court and the entry of an Order thereon.

3

R-18 Seller shall be entitled, at her option to remain in the premises post closing per the attached post closing agreement.

R-19: The Seller and Purchaser are aware that the Property Condition Disclosure Act (Article 14 of the New York Real Property Law) which went into effect March 1, 2002, requires the seller of Residential Real Property to cause a Property Condition Disclosure Statement to be delivered to a buyer or buyer's agent prior to the signing by the buyer of a binding Contract of Sale. Said provision of law is inapplicable in such cases where the seller is an Estate. The statute defines Residential Real Property as real property improved by a one (1) to four (4) family dwelling used or occupied, or intended to be used or occupied, wholly or partly, as the home or residence of one or more persons, but shall not refer to: (a) unimproved real property upon which such dwellings are to be constructed or (b) condominium units or cooperative apartments or (c) property on a homeowners association that is not owned in fee simple by the seller.

The property condition disclosure statement is a statement of certain conditions and information concerning the property known to the seller. The property condition disclosure statement is not a warranty of any kind by the seller or by any agent representing the seller in the transaction. It is not a substitute or any inspections or tests and the statute encourages a buyer to obtain his or her own independent professional inspections and environmental tests and also is encouraged to check public records pertaining to the property. If a property Condition Disclosure Statement is not delivered to a buyer by a seller prior to the buyer signing a binding Contract of Sale, then upon the transfer of title the buyer is entitled to receive a credit of five hundred ($500.00) dollars against the agreed upon purchase price of the residential real property.

R-20: Although this transaction is not subject to a mortgage contingency, Purchaser may at his own risk may obtain mortgage financing so long as such financing does not materially effect the closing date. In the event Purchaser seeks a mortgage loan, Seller will permit access to the subject premises upon reasonable notice for appraisal purposes and Seller agrees to execute any usual and customary loan documents required by said lender at closing.

R-21: Seller shall, at or prior to closing remove all motor vehicles from the premises not ordinarily used by Seller and her family for daily transportation. All motor vehicles shall be removed from the premises post closing at such time as the Seller vacates the premises and delivers possession to Purchaser.

R-22: Seller represents that the heating system will be in working order as of the date of closing.

4

_____          _____
Seller                            Buyer

## OCCUPANCY AGREEMENT FOR SELLER IN POSSESSION AFTER CLOSING

**THIS AGREEMENT,**made on _____ 2021, by and between **TISHA M. RUNYAN** "Seller" and **MOSHE SCHWARTZ "Buyer ".**

### RECITALS

**WHEREAS,** the Seller is presently the owners of **23 Stangel Drive, Woodbourne, NY** And the closing for the premises and transfer of title occurred on_____

**WHEREAS,** the Buyers and Seller have consummated the sale on even date, and;

**WHEREAS,** the parties have agreed that the Seller may retain possession after the closing of the sale as hereinafter provided;

**NOW, THEREFORE,** in consideration of the closing of title to the premises and other good and valuable consideration, the following is agreed between the Buyers and Seller:

i.  From the Closing Date, Seller shall reimburse the Purchaser as follows: Seller shall pay to Purchaser the sum of $1300 per month for the first two months of possession; thereafter seller shall pay to purchaser the sum of $1600.00 per month for the next four months; on a per diem basis, as post-closing occupancy fees, until the Premises is delivered vacant and broom clean. Seller may vacate at any time and receive a per diem credit for any overpayment of rent for the applicable month.

ii. said payment shall be made on the first (1st) day of each calendar month and balance of rent/rent arrears if any during the Post Closing Possession Period and the initial month shall be a credit, to Purchaser, at Closing. Seller shall be responsible for the payment of all utilities including water during their possession. However, if the Seller fails to remit payment by 10th of such calendar month and such failure to remit payment continues till the end of such calendar month, then Seller will be held in default under the terms of such post-closing agreement. The remedies available to the Purchaser includes all available remedies under law and equity including removal of the post-closing occupant and demand a release of the monies held in escrow by the Escrowee for current rent due Moreover, such Purchaser shall NOT be obligated to send any additional notice to Seller of such non-payment. If by the end of a calendar month the fees remain due and unpaid, the parties herein agree that the Escrow Agent shall be directed to release the monies in escrow with no further direction from either party.

iii.
    If Seller has not vacated the Premises by 6 months after the closing, then the Purchaser may lawfully take legal action to remove the Seller from the Premises, including judicial, , summary proceeding at sellers' cost including reasonable attorney fees to be paid by Seller may be fixed by the court

iv.  At all times during term of possession, the utilities shall be paid by the Seller.

v.  The Seller will pay, indemnify, and hold the Buyers harmless against any and all claims, damages, attorney is fees and causes of action for damages arising during the term of their    possession of the property, arising from the gross negligence or willful acts of Seller, and will indemnify the Buyers from all such suits, orders or decrees and judgments, including attorney's fees, entered therein brought on account of injury to the person or property, or loss of life sustained by the use and occupancy of the premises described herein which is the subject of this Agreement caused by the acts and/or omissions of the Seller. Seller release and absolve the Buyers from liability for loss or damage to the property caused by fire or any other casualty, arising from the gross negligence or willful acts of Seller. Notwithstanding the foregoing to the contrary, Purchaser shall look first to any insurance coverages insuring the Premises.

vi.  The Seller shall maintain the demised premises in good condition, and upon delivery of possession of the property deliver such property in vacant and clean condition Seller will only be responsible for damage due to Sellers acts or omissions excepted reasonable wear and tear.

vii.  Sellers give the Buyers the right to inspect the premises at reasonable times and upon reasonable notice and agree to maintain the real property and personal property that is the subject of the Purchase and Sale Contract between the parties in its current as-is condition.

viii.  Seller shall provide final paid bill for water and sewer prior to disbursing escrow to the parties

ix.  It is understood and agreed that this Agreement constitutes the only Agreement between the parties relative to the possession of the demised premises and that no oral statement or prior written statement shall have any force or effect with regards to said Agreement. This Agreement shall not be modified except in writing subscribed by the parties hereto.

x.  At closing, the Sellers shall deposit with their attorney the sum of $10,000.00 to be held by in escrow to ensure timely payments of the possession fee. Escrow shall not be released until both the Seller and Purchasers attorney have confirmed delivery of possession (via email) of the Premises being vacant and in broom-clean condition and any amounts due by and between the Parties.

xi.  The provisions herein shall survive Closing and/or be replaced by a post-closing occupancy agreement to be executed at Closing by and between the parties.

xii.  Nothing herein shall be construed to create a Landlord-Tenant relationship between the parties.

All other terms in the Contract remain in full force and effect

**IN WITNESS WHEREOF,** Buyers and Seller signed and sealed this Agreement as of the
date and year first above written.

_____                    _____
                                                    Moishy Schwartz (Dec 22, 2021 18:54 EST)
Seller                                              Buyer

*In Witness Whereof,* this contract has been duly executed by the parties hereto.

_____
**TISHA M. RUNYAN**

*Seller*

_____
**MOSHE SCHWARTZ**

*Purchaser*

_____

*Seller*

_____

*Purchaser*

Attorney for Seller: Zachary D. Kelson, Esq.
Address:   10 St. John St., P.O. Box 1210,
                   Monticello, New York 12701-8210

Tel.:  (845) 794-1000      Fax:  (845) 794-1422
zacharykelson@gmail.com

Receipt of the Downpayment is acknowledged and the undersigned
agrees to act in accordance with the provisions of paragraph 6 above.

Attorney for Purchaser: Abraham Weisel, Esq.
Address: 491 Route 208- Suite 305
Monroe, New York, 10950
office@weisellaw.com/ office@azcloser.com
Tel.: ( 845) 637-2360- ext #102  Fax:( 845 ) 237-3954

_____

*Escrowee*

## *Contract of Sale*

TITLE NO.

_____

**TISHA M. RUNYAN**

TO

**MOSHE SCHWARTZ**

### PREMISES

| | |
|---|---|
| Sheet | |
| Section | 23. |
| Block | 12 |
| Lot | 2.1 |
| Plate | |
| County/Town | Sullivan/ Fallsburg |
| Street Number | 23 Stangel Drive |

7